IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 30, 2010 Session

## ROBERT G. CRABTREE, JR., ET AL. v. JENNIFER L. LUND

**Appeal from the Circuit Court for Carter County**
**No. C10184      Thomas J. Seeley, Jr., Judge**

**No. E2009-01561-COA-R3-CV - FILED OCTOBER 28, 2010**

Robert G. Crabtree, Jr., and Bonnie K. Hakey (collectively "the plaintiffs") filed suit against Jennifer L. Lund ("the defendant") seeking compensation[1] for personal injuries and property damage arising out of a April 22, 2005, multiple-vehicle accident in Carter County. With her answer, the defendant coupled a motion to dismiss under Tenn. R. Civ. P. 12.02 "on the basis of insufficiency of process and insufficiency of service of process." Following a hearing, the trial court dismissed the plaintiffs' suit with prejudice finding "that the Plaintiffs have not provided to the Court any valid reason for the delay in obtaining prompt service of process upon the Defendant." Plaintiffs appeal. We (1) vacate the trial court's judgment dismissing the plaintiffs' complaint and (2) remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated; Case Remanded**

CHARLES D. SUSANO, JR., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., joined. D. MICHAEL SWINEY, J., filed a separate concurring opinion.

Thomas E. Cowan, Jr. (trial counsel) and J. Collins Landstreet, II (appellate counsel), Elizabethton, Tennessee, for the appellants, Robert G. Crabtree, Jr. and Bonnie K. Hakey.[2]

J. Eddie Lauderback, Johnson City, Tennessee, for the appellee, Jennifer L. Lund.

### OPINION

---

[1]The plaintiffs seek both compensatory and punitive damages.

[2]All of the papers in the technical record reflect this plaintiff's name as "Bonnie K. Hakey" while the brief filed by the plaintiffs reflect her name as "Bonnie K. Hakey-Crabtree."

## I.

### A.

At the outset, we note that there is no transcript or statement of the evidence with respect to the trial court's hearing of June 8, 2009 – following which the trial court entered, on June 30, 2009, an order dismissing the plaintiffs' complaint. It is clear from the court's order and the entire record on appeal that the court did not hear oral testimony at the June 8, 2009, hearing. In fact, the order recites that the case was before the court on

> the Motion to Dismiss filed by the Defendant, Affidavits filed
> by the parties, Briefs submitted by each party, and Arguments of
> counsel, . . .

It is clear from the record that the only "evidence" before the court were four summonses, the affidavit of the defendant Jennifer L. Lund, and the affidavit of the plaintiffs' attorney, Thomas E. Cowan, Jr. ("plaintiffs' trial counsel"). This being the case, we would normally treat the trial court's action in granting the defendant's motion as a grant of summary judgment.[3] We note, however, that neither party characterizes the court's action as being one of a grant of summary judgment; nor did either side even mention or address summary judgment in their respective briefs. We believe there is a good reason for the absence of such mention or discussion. It is clear to us that the parties acquiesced in the trial court's treatment of their affidavits as evidence, as if the testimony had been presented orally at a bench trial. We believe the parties did this because the affidavits of the parties do not really conflict; they are more supplementary than conflicting. This is another way of saying that there are essentially no disputes of material fact. The parties' dispute – and it is real and significant – lies in what the parties contend these facts show in the context of the applicable law.

### B.

The plaintiffs filed suit on April 21, 2006, obviously within the one-year statute of limitations applicable to the plaintiffs' suit arising out of the April 22, 2005, automobile accident. A summons ("the original summons") was issued on April 24, 2006, and received the same day by plaintiffs' trial counsel. The original summons was returned signed (but undated) by plaintiffs' trial counsel with the notation "unable to locate Jennifer L. Lund."

---

[3]*See* Tenn. R. Civ. P. 12.03.

A second summons ("the second summons") was issued April 2, 2007. As can be seen, the second summons was issued "within one year from issuance" of the original summons. *See* Tenn. R. Civ. P. 3. The second summons was also received by plaintiffs' trial counsel – this time on April 3, 2007. It was returned by plaintiffs' trial counsel with a date of July 3, 2007, and with a notation "unable to locate Jennifer L. Lund." The return was signed by plaintiffs' trial counsel.

A third summons ("the third summons") was issued February 8, 2008, within one year of the issuance of the second summons. It was returned, dated May 8, 2008, unsigned, but with a notation, obviously in the handwriting of plaintiffs' trial counsel, "unable to locate Jennifer Lund."

The last summons ("the last summons") was issued September 9, 2008 – within one year of the issuance of the third summons – and signed by plaintiffs' trial counsel as having been received on that date. The return states that it was served on the defendant on October 10, 2008.

As previously noted, the defendant filed her affidavit, which, in pertinent part, recites as follows:

> I am a resident of Carter County, Tennessee, currently residing at 360 Fiddler's Branch in Hampton, Tennessee.
>
> I have lived and resided exclusively at this address since September of 2004.
>
> I am currently employed at Citizens' Bank located at 614 Hwy 321 in Hampton, Tennessee, and have been an employee of same since February, 2005. For the better part of 2007, I worked out of the branch located at 300 Broad Street in downtown Elizabethton, Tennessee.
>
> I have not left Carter County, for any reason nor for any period of time longer than one day, since at least 2003.
>
> All of my family, friends and relatives live in Carter County, Tennessee.
>
> I have not been approached by a process server, Sheriff's Deputy or other individual attempting to serve me with the

Complaint in this matter until I was served with same at my place of employment on the 10th day of October, 2008 by the attorney for the Plaintiffs, Thomas Cowan. At no time prior to this and since the incident in question have I ever received any sort of correspondence or communication, whether it be regular or certified mail, via telephone, or otherwise, from the attorney for the Plaintiffs in this matter.

(Paragraph numbering in original omitted.) The defendant argues that this affidavit demonstrates that she was available to be served in Carter County during essentially all of the period from the time the plaintiffs' complaint was filed up to the actual date of service on October 10, 2008. She extrapolates from this that there was no valid reason for the plaintiffs' failure to promptly serve her.

C.

The plaintiffs' trial counsel countered with his own affidavit:

The traffic accident report prepared by THP Dexter Lunceford found that Defendant lost control of her Mustang at a high rate of speed, crossing the median of U.S. Highway 19-E, striking Plaintiff's Pontiac with such force that the Mustang broke completely into two pieces, the rear portion striking a third vehicle, resulting in serious personal injuries to Plaintiff[s] and medical expenses provided Defendant through discovery exceeding $28,987.53. Plaintiff[s] had every reason to advance their claim for damages and absolutely no reason to *intentionally* delay this cause. . . .

Following issuance of original process in this cause on April 24, 2006, counsel attempted to serve process on Defendant at the residence stated in the Tennessee Uniform Traffic Crash Report, 360 Fiddler's Branch, Hampton, Tennessee 37658, located approximately 15-20 miles from Elizabethton, Tennessee, on June 30, 2006 but was unable to locate Defendant; subsequently, due to the distance of the residence from Elizabethton, attempts to contact Defendant at the telephone number listed in the report (725-9907) to make arrangements for service of process were unsuccessful. It is affiants' recollection from review of file materials, that this listed number may have been incorrect, as the

published telephone directory contained no listing for Jennifer L. Lund at all, and a listing for "David Lund, 360 Fiddlers Branch Road, Hamp[ton] 37658 . . . . 725-9904."

Process was reissued on April 2, 2007. Upon attempting to serve Defendant at her place of employ[ment], Citizens Bank . . . 641 Highway 321, Hampton, Tennessee, affiant was advised that the Defendant was on maternity leave, having given birth to a child in February, 2007, which work absence was subsequently confirmed in follow-up telephone calls to personnel at Citizens Bank during the ninety-day period provided for service of said summons that ended July 3, 2007.

. . . [process was] reissued on September 9, 2008 and served upon Defendant October 10, 2008, at the Broad Street Branch of Citizens Bank, where she had been assigned after return from maternity leave.

From the date of filing of this action to the date process was served upon Defendant, Plaintiff[s] and affiant never had any reason or intent to withhold service of process.

(Paragraph numbering in original omitted; emphasis in original.) The plaintiffs argue that these facts show that they tried, albeit unsuccessfully, to serve the defendant. In any event, they argue that they did not "intentionally" delay service of process.

D.

In dismissing the plaintiffs' complaint, the trial court sided with the defendant. The court premised its decision on the following findings:

. . . finds that the Plaintiffs have not provided to the Court any valid reason for the delay in obtaining prompt service of process upon the Defendant. The Court further finds that under the facts of this case, the filing of the initial Complaint was not effective because of the delay of prompt service of the Summons upon the Defendant, . . .

-5-

The court ruled that, since the filing of the complaint was "not effective," it could not serve to toll the running of the applicable one-year statute of limitations. Hence, according to the court, the suit was barred by that statute. This appeal followed.

II.

The plaintiffs, in their own words, state the issue thusly:

> Did the trial court err in dismissing Plaintiff[s'] personal injury action that was timely filed within the applicable personal injury statute of limitations for *intentionally and deliberately* withholding service of process thereafter upon Defendant?

(Emphasis in original.) The defendant, in her brief, states the issue in more general terms, alluding to the trial court's dismissal as being based upon the plaintiffs' "failure to comply with the . . . Rules of Civil Procedure." Both parties find support for their respective conflicting positions in Tenn. R. Civ. P. 3 and 4.01(3). They also both rely on the same litany of appellate decisions. More about these cases later.

Since rules pertaining to practice and procedure in the trial and appellate courts "have the force and effect of law," *see Richards v. Newby*, 1991 WL 163541 at *3 (Tenn. Ct. App. Aug. 27, 1991) (citing *Crosslin v. Alsup*, 594 S.W.2d 379, 380 (Tenn. 1980)), we apply frequently-quoted rules of statutory construction to our interpretation of the procedural rules at issue in this case:

> The role of the courts in construing statutes is to ascertain and give effect to the legislative intent. Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language.

*Stempa v. Walgreen Co*., 70 S.W.3d 39, 42 (Tenn. Ct. App. 2001) (citations, footnote and internal quotations in original omitted). Statutory construction raises a question of law. *Cape Fear Paging Co. v. Huddleston*, 937 S.W.2d 787, 788 (Tenn. 1996). Hence, we review it *de novo* with no presumption of correctness attaching to the trial court's legal conclusion. *Stempa* at 42. In approaching the task of interpreting the relevant rules, we are aided by a number of Tennessee appellate decisions. We will now discuss those cases.

III.

Effective July 1, 2004, new paragraph 4.01(3) was added to Tenn. R. Civ. P. 4.01. The new paragraph provides as follows:

> If a plaintiff or counsel for plaintiff (including third-party plaintiffs) intentionally causes delay of prompt issuance of a summons or prompt service of a summons, filing of the complaint (or third-party complaint) is ineffective.

The Advisory Commission Comment to the new paragraph is instructive:

> New paragraph 4.01(3) would sanction lawyer misconduct such as that in *Stempa v. Walgreen Company*, 70 S.W.3d 39 (Tenn. Ct. App. 2001), where original counsel for plaintiffs "instructed" the clerk not to issue summonses for almost a year, despite the paragraph 4.01(1) instruction that clerks must issue a summons "forthwith."

In **Stempa**, the "Plaintiffs' original attorney instructed the clerk at the Knox County Circuit Court not to issue any summonses at [the time suit was filed on May 1, 1998]. Summonses were not issued until April 29, 1999, almost one full year after the Complaint was filed." 70 S.W.3d at 41. The trial court held that the plaintiffs did not timely comply with the provisions of Tenn. R. Civ. P. 3 and 4. *Id*. Consequently, the court dismissed the complaint. *Id*. Relying upon language in Rule 3 – "[i]f process remains unissued for 30 days[4]. . ., *regardless of the reason*" (emphasis added) – we concluded that, while the "conduct of [the] attorney certainly is not to be condoned," the reason "for process not being issued is not a consideration." *Id*. at 43. Since process in **Stempa** was eventually issued and, importantly, issued within one year of the filing of the complaint, we opined that the lawsuit was not subject to dismissal because of the attorney's less-than-stellar conduct. *Id*.

Tenn. R. Civ. P. 4.01(3) has clearly "changed the landscape."[5] The application of Rule 3's "regardless of the reason" language – while still a part of that rule – is limited by the Rule 4.01(3) language pertaining to a situation where one "intentionally causes delay of

---

[4]The current version of Rule 3 specifies 90 days.

[5]The Supreme Court has stated that Rule 4.01(3) "effectively bars a 'secret' suit." **Building Materials Corp. v. Britt**, 211 S.W.3d 706, 709 n.2 (Tenn. 2007).

prompt issuance of a summons or prompt service of a summons." If such intentional conduct occurs, the "filing of the complaint . . . is ineffective." While the trial court in the instant case did not use the words "intentional conduct," we believe the court was clearly focused on such in determining that service of process was not effective to allow the plaintiff to "rely upon the original commencement [of the plaintiffs' suit] to toll the running of" the statute of limitations. Tenn. R. Civ. P. 3. We believe the trial court misconstrued the word "intentionally" as that word is used in Rule 4.01(3) and as construed by the cases.

In *Estate of Butler v. Lamplighter Apts*., 278 S.W.3d 321 (Tenn. Ct. App. 2008), counsel for the plaintiffs held process and made "no attempt . . . to serve any of the defendants" for more than 11 months. *Id*. at 323. Counsel "admitted that she made a conscious, voluntary decision to prevent service of process" and that she did so "because she hoped to settle the case." *Id*. We held that the filing of the complaint was not effective because the plaintiffs there *"intentionally* caused the delay of prompt service of a summons." *Id*. at 324 (emphasis in original).

We reached the same conclusion in *Jones v. Cox*, 316 S.W.3d 616 (Tenn. Ct. App. 2008) (in a legal malpractice case, counsel deliberately withheld service of process pending the outcome of the underlying case in which the defendant attorney had allegedly committed malpractice) and in *Jones v. Vasu*, No. W2009-01873-COA-R10-CV, 2010 WL 1610590 (Tenn. Ct. App. W.S., filed April 22, 2010) (plaintiffs delayed service on defendant doctors in medical malpractice case until the plaintiffs had an expert witness to review their claim). "Under [Rule 4.01(3)] it is the intent to withhold service of process that is the test." *Jones v. Cox*, 316 S.W.3d at 621. It makes no difference that the withholding of service of process is "for a very reasonable purpose." *Id*.

IV.

In the case at bar, the plaintiffs attempt to explain why service of process was not effected until the last summons was served on the defendant on October 20, 2008. One can argue that they should have done more – that they should have been more diligent in their efforts or that their lack of effort amounts to negligent lawyering;[6] but that is not the issue. The issue is whether they *"intentionally*" caused a "delay of . . . prompt service." In all of the cases where the Rule 4.01(3) issue has been raised, there is a common thread, *i.e.*, in each instance, a plaintiff made a conscious decision not to promptly serve process because of some perceived advantage to the plaintiff in delaying service. The plaintiffs in those cases did *not*

---

[6]We note in passing that we are not convinced that this case involves even negligent lawyering. Efforts were clearly made to effect service.

want to promptly serve the defendants because they thought it was to their advantage to delay service.

The trial court apparently concluded that the plaintiffs "intentionally" delayed service of process because they failed to serve someone who was, at all times, there to be served; and failed to provide a "valid reason" for this failure. This puts the proverbial "cart before the horse." The defendant filed the motion to dismiss. It was her burden to prove that the plaintiffs' failure to serve her was "intentional" as that word is used in Rule 4.01(3). She failed to meet her burden.

There are two parts to the Rule 4.01(3) concept under discussion: first, "delay of . . . prompt service of a summons"; and, second, intentional conduct on the part of a party or its agent that causes the delay. The delay, standing alone, is not enough. In fact, Tenn. R. Civ. P. 3 is structured in such a way as to recognize that prompt service, for a myriad of reasons, may not be accomplished in any given case; hence, the language of Rule 3 permitting a party to keep its filed lawsuit alive by "obtaining issuance of new process within one year from issuance of the previous process." That is what happened here when, on three occasions, a new summons was issued and, in each instance, the new process was issued within one year of the issuance of the "previous process." Without the requisite intentional conduct, the delay is immaterial as far as the effectiveness of the original filing is concerned.

The instant case does not involve the intentional conduct contemplated by Tenn. R. Civ. P. 4.01(3). The defendant does not identify any advantage, perceived or otherwise, that the plaintiffs gained as a result of process not being promptly service. By the same token, there is nothing about the plaintiffs' alleged cause of action that might prompt them or their counsel to want to delay service of process; quite to the contrary, if the allegations of the complaint are true, they appear to have a good case. Furthermore, there are no external factors appearing in the record that arguably might suggest that it was in the plaintiffs' best interest to "slow walk" their case. Simply stated, the record contains no evidence that the plaintiffs *intentionally* delayed service of process. The trial court erred in finding a violation of Rule 4.01(3).

V.

The judgment of the trial court is vacated and this case is remanded for further proceedings. Costs on appeal are taxed to the appellee, Jennifer L. Lund.

_____
CHARLES D. SUSANO, JR., JUDGE